## SETTLEMENT AGREEMENT
## AND MUTUAL GENERAL RELEASE

BERKANT HAKLI, including his heirs, representatives, attorneys, successors, and assigns, KARIM LAROUSSI, including his heirs, representatives, attorneys, successors, and assigns (hereinafter referred to as "Plaintiffs"), and Defendants, BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC. including all of its officers, directors, representatives, shareholders, owners, agents, attorneys, and employees, (hereinafter referred to as "Defendant") for good and valuable consideration, receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully and completely all matters or disputes that now exist or may exist between them, agree as follows:

**1.     Mutual General Release.** In consideration for the promises contained in this Settlement Agreement and General Release (the "Agreement"), the Parties unconditionally release and discharge each other (collectively referred to as the "Released Parties") from any and all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which either party now owns or holds, or has owned or held against the Released Parties, including, but not limited to, any and all claims, demands, liabilities, or causes of action which arise out of, or are in any way connected with each Plaintiff's employment with, or the separation of their employment with the Defendants, or which arise out of or are in any way connected with any loss, damage, or injury whatsoever to Plaintiffs resulting from any act or omission by or on the part of the Released Parties committed prior to the date of this Agreement. Included in the claims, demands, liabilities, and causes of action being released and discharged by Plaintiff are, without limitation, all claims under Title VII of the 1964 Civil Rights Act; the Civil Rights Act of 1991; the Older Workers Benefit Protection Act; the Equal Pay Act; ADEA, the Fair Labor Standards Act ("FLSA"); the Employee Retirement Income Security Act (ERISA); the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Family and Medical Leave Act of 1993; 42 U.S.C. §§ 1981, 1985(3), and 1986; the Occupational Safety and Health Act; Chapter 760, Florida Statutes; the Florida Private Whistle-blower's Act of 1991; Chapter 11A of the Miami-Dade County Code; Florida Minimum Wage Act; and any and all other laws, statutes, ordinances, treaties, rules or regulations of the United States of America, or any other country, state, county, municipality, or political subdivision thereof. This Release includes all claims which were, or could have been, asserted in the lawsuit styled BERKANT HAKLI AND KARIM LAROUSSI VS. BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC., Case No.: 17-20425-CIV-MARTINEZ/GOODMAN, pending before the U.S. District Court for the Southern District of Florida (hereinafter referred to as the "Litigation").

**2.     Settlement Amount and Attorney's Fees.** In consideration of the promises of Plaintiffs as set forth herein, the Parties agree to settle Plaintiffs' claims for a total of Twenty One Thousand Dollars and no Cents ($21,000.00) to be paid within Five (5) calendar days of court approval, delivery of a Form W9 for each Plaintiff and their counsel to counsel for the Defendant, and return of all checks delivered to the Plaintiffs on or about March 22, 2017. Out of the settlement proceeds, Plaintiff, Berkant Hakli, will receive a total of Seven Thousand Nine Hundred Thirty Dollars ($7,930.00), allocated as Three Thousand Nine Hundred Sixty-Five Dollars ($3,965.00) as wages and Three Thousand Nine Hundred Sixty-Five Dollars ($3,965.00) as liquidated

damages; Plaintiff Karim Laroussi will receive a total of Four Thousand Two Hundred Thirty Dollars ($4,230.00) allocated as Two Thousand One Hundred Fifteen Dollars ($2,115.00) as wages and Two Thousand One Hundred Fifteen Dollars ($2,115.00) as liquidated damages; and Plaintiffs' counsel will receive Eight Thousand Four Hundred Dollars and No Cents ($8,400.00) as attorneys' fees and Four Hundred Forty Dollars ($440.00) as costs.

Plaintiffs warrant that this amount is the full amount of wages and/or other compensation owed to them by Defendant and the Released Parties (including liquidated damages, if any), and no further amounts are owed; and the parties agree that the above amount fully satisfies any and all attorneys' fees and costs owed and no further application for fees or costs could be brought.

3. **Indemnification**. Plaintiffs acknowledge and agree that it shall be solely and exclusively each Plaintiff's obligation and responsibility to report to the appropriate governmental agencies and other authorities all monies received as wages and/or other compensation under this Agreement and to report and pay all related taxes or impositions. Plaintiffs shall indemnify and hold harmless Defendant, their directors, officers, subsidiaries and affiliates from and against any and all claims, damages, losses, liabilities or obligations asserted, or imposed and/or threatened against Defendant by any person or entity relating, directly or indirectly, to the monies received by Plaintiffs hereunder, including, without limitation, Plaintiffs, the IRS, or any other person.

4. **Confidentiality**. The Parties will maintain the terms of this Agreement confidential and shall not disclose the terms of this Agreement to any third party, with the exception of their lawful spouse, their attorneys and tax preparer/accountants provided that such disclosure to the attorneys and tax preparer/accountants is made for the purposes of the attorneys and tax preparer/accountants providing legal and/or tax advice, for tax reporting purposes, pursuant to a subpoena or when otherwise required by law, for approval of this Agreement, and for enforcement of this Agreement. Notwithstanding the foregoing, the parties will take all actions to seek joint approval of this Agreement from the Court and agree to submit the Agreement to the Court for review and represent that the Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

5. **No Re-Hire**: Plaintiffs hereby agree and recognize: (a) that Plaintiff's employment with Defendant has ended and Plaintiff will not apply for or otherwise seek employment with Defendant or their divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners and successors; and (b) that Defendant has no obligation to employ, hire, reinstate or otherwise engage Plaintiff in the future. Plaintiffs further agree and recognizes that if either Plaintiff applies and/or is hired by Defendant or its affiliated entities in the future, this Agreement is sufficient and appropriate legal grounds for denying employment and/or terminating Plaintiff's employment regardless of whether the entity is specifically mentioned herein. The Parties further agree that any future acts by Defendant in denying Plaintiffs employment, shall not be construed as retaliation pursuant to 29 U.S.C. 215(a)(3).

6. **Non-Admission Clause.** By entering into this Agreement, Defendant does not admit any liability whatsoever to Plaintiffs or to any other person arising out of any claims asserted,

or that could have been asserted in any claim, and expressly deny any and all such liability and have resolved this matter solely as a business decision to save the expenditure of attorneys' fees.

7. **Non Disparaging Remarks**. The Parties agree that they will not disparage one another, by written or oral word, gesture, or any other means, nor will they make any untrue disparaging or negative comments about one another, to any person or entity. In the event that a prospective employer requests a reference for Plaintiffs, the parties agree that Defendant will only provide dates of work, position(s) held, and/or rates of pay and will not make any reference to any claim, lawsuit, nor to the resolution thereof.

8. **Agreement Not to Be Used as Evidence**. Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be deemed to be, or may be used as, an admission of, or evidence of the validity of any released claim, or of any wrongdoing in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Agreement. Defendant, however, may file this Agreement in any action that may be brought against it in order to support a defense or counterclaim based on principals of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9. **Severability.** In the event that one or more terms or provisions of this Agreement are found to be invalid or unenforceable for any reason or to any extent, each remaining term and provision shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

10. **Entire Agreement**. This Agreement constitutes the complete understanding of the parties hereto and supersedes any and all prior agreements, promises, representations, or inducements, whether oral or written, concerning its subject matter. No promises, modifications, or agreements made subsequent to the execution of this Agreement by these parties shall be binding unless reduced to writing and signed by an authorized representative of each party.

11. **Enforcement**. In the event any action is commenced to enforce said settlement agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

12. **Voluntariness.** Each Plaintiff certifies that he has fully read, negotiated, and completely understands the provisions of this Agreement, that Plaintiffs have been advised by Defendant to consult with an attorney before signing the Agreement, and that Plaintiffs are signing freely and voluntarily, and without duress, coercion, or undue influence.

13. **Representation of Comprehension of Document.** Plaintiffs affirm and acknowledge that: (i) Plaintiffs have been given twenty-one days to review this document and make a decision prior to its execution, and, if Plaintiffs have elected to take less time to consider this document, Plaintiffs did so knowingly, voluntarily, and with full understanding of the waiver of their legal right to consider this document for the full twenty-one days; (ii) Plaintiffs have had the opportunity to consult with counsel regarding the terms of this document prior to execution

3 of 4

Hakli_____ Defendant_____
Laroussi_____

and did in fact consult with counsel; (iii) Plaintiffs fully understand this document; and (iv) Plaintiffs have freely and voluntarily executed this document.

**14. Option to Revoke.** Plaintiffs affirms and acknowledges that they are forty years old or older on or before the date of this Agreement, and have seven days following the execution of this Agreement to revoke his agreement and it will not become effective or enforceable until after the seven-day revocation period has expired. Any revocation must be in writing and received by Russell Landy, Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, FL 33131 within the seven-day period following execution of this Agreement by the revoking Plaintiff. The amounts set forth above will not be paid until the expiration of this 7 day revocation period, or longer as set forth herein.

**15. Approval:** Within eight days of the execution of this Settlement Agreement by all parties, the parties will file with the court a joint motion to approve the Settlement Agreement. The parties and their counsel will take all actions necessary to gain approval of the settlement and dismiss the Litigation with prejudice.

**16. Counterparts**: This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

BERKANT HAKLI

By:_____
BERKANT HAKLI

Date: _____

BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC.

By: _[signature]_

Print Name: Ron Kupferman

Date: 6/28/17

KARIM LAROUSSI

By:_____
KARIM LAROUSSI

Date: _____

## SETTLEMENT AGREEMENT
## AND MUTUAL GENERAL RELEASE

BERKANT HAKLI, including his heirs, representatives, attorneys, successors, and assigns, KARIM LAROUSSI, including his heirs, representatives, attorneys, successors, and assigns (hereinafter referred to as "Plaintiffs"), and Defendants, BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC. including all of its officers, directors, representatives, shareholders, owners, agents, attorneys, and employees, (hereinafter referred to as "Defendant") for good and valuable consideration, receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully and completely all matters or disputes that now exist or may exist between them, agree as follows:

1. **Mutual General Release.** In consideration for the promises contained in this Settlement Agreement and General Release (the "Agreement"), the Parties unconditionally release and discharge each other (collectively referred to as the "Released Parties") from any and all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which either party now owns or holds, or has owned or held against the Released Parties, including, but not limited to, any and all claims, demands, liabilities, or causes of action which arise out of, or are in any way connected with each Plaintiff's employment with, or the separation of their employment with the Defendants, or which arise out of or are in any way connected with any loss, damage, or injury whatsoever to Plaintiffs resulting from any act or omission by or on the part of the Released Parties committed prior to the date of this Agreement. Included in the claims, demands, liabilities, and causes of action being released and discharged by Plaintiff are, without limitation, all claims under Title VII of the 1964 Civil Rights Act; the Civil Rights Act of 1991; the Older Workers Benefit Protection Act; the Equal Pay Act; ADEA, the Fair Labor Standards Act ("FLSA"); the Employee Retirement Income Security Act (ERISA); the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Family and Medical Leave Act of 1993; 42 U.S.C. §§ 1981, 1985(3), and 1986; the Occupational Safety and Health Act; Chapter 760, Florida Statutes; the Florida Private Whistle-blower's Act of 1991; Chapter 11A of the Miami-Dade County Code; Florida Minimum Wage Act; and any and all other laws, statutes, ordinances, treaties, rules or regulations of the United States of America, or any other country, state, county, municipality, or political subdivision thereof. This Release includes all claims which were, or could have been, asserted in the lawsuit styled BERKANT HAKLI AND KARIM LAROUSSI VS. BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC., Case No.: 17-20425-CIV-MARTINEZ/GOODMAN, pending before the U.S. District Court for the Southern District of Florida (hereinafter referred to as the "Litigation").

2. **Settlement Amount and Attorney's Fees.** In consideration of the promises of Plaintiffs as set forth herein, the Parties agree to settle Plaintiffs' claims for a total of Twenty One Thousand Dollars and no Cents ($21,000.00) to be paid within Five (5) calendar days of court approval, delivery of a Form W9 for each Plaintiff and their counsel to counsel for the Defendant, and return of all checks delivered to the Plaintiffs on or about March 22, 2017. Out of the settlement proceeds, Plaintiff, Berkant Hakli, will receive a total of Seven Thousand Nine Hundred Thirty Dollars ($7,930.00), allocated as Three Thousand Nine Hundred Sixty-Five Dollars ($3,965.00) as wages and Three Thousand Nine Hundred Sixty-Five Dollars ($3,965.00) as liquidated

1 of 4

Hakli _BH_
Laroussi _KL_

Defendant_____

damages; Plaintiff Karim Laroussi will receive a total of Four Thousand Two Hundred Thirty Dollars ($4,230.00) allocated as Two Thousand One Hundred Fifteen Dollars ($2,115.00) as wages and Two Thousand One Hundred Fifteen Dollars ($2,115.00) as liquidated damages; and Plaintiffs' counsel will receive Eight Thousand Four Hundred Dollars and No Cents ($8,400.00) as attorneys' fees and Four Hundred Forty Dollars ($440.00) as costs.

Plaintiffs warrant that this amount is the full amount of wages and/or other compensation owed to them by Defendant and the Released Parties (including liquidated damages, if any), and no further amounts are owed; and the parties agree that the above amount fully satisfies any and all attorneys' fees and costs owed and no further application for fees or costs could be brought.

3. **Indemnification**. Plaintiffs acknowledge and agree that it shall be solely and exclusively each Plaintiff's obligation and responsibility to report to the appropriate governmental agencies and other authorities all monies received as wages and/or other compensation under this Agreement and to report and pay all related taxes or impositions. Plaintiffs shall indemnify and hold harmless Defendant, their directors, officers, subsidiaries and affiliates from and against any and all claims, damages, losses, liabilities or obligations asserted, or imposed and/or threatened against Defendant by any person or entity relating, directly or indirectly, to the monies received by Plaintiffs hereunder, including, without limitation, Plaintiffs, the IRS, or any other person.

4. **Confidentiality**. The Parties will maintain the terms of this Agreement confidential and shall not disclose the terms of this Agreement to any third party, with the exception of their lawful spouse, their attorneys and tax preparer/accountants provided that such disclosure to the attorneys and tax preparer/accountants is made for the purposes of the attorneys and tax preparer/accountants providing legal and/or tax advice, for tax reporting purposes, pursuant to a subpoena or when otherwise required by law, for approval of this Agreement, and for enforcement of this Agreement. Notwithstanding the foregoing, the parties will take all actions to seek joint approval of this Agreement from the Court and agree to submit the Agreement to the Court for review and represent that the Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

5. **No Re-Hire**: Plaintiffs hereby agree and recognize: (a) that Plaintiff's employment with Defendant has ended and Plaintiff will not apply for or otherwise seek employment with Defendant or their divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners and successors; and (b) that Defendant has no obligation to employ, hire, reinstate or otherwise engage Plaintiff in the future. Plaintiffs further agree and recognizes that if either Plaintiff applies and/or is hired by Defendant or its affiliated entities in the future, this Agreement is sufficient and appropriate legal grounds for denying employment and/or terminating Plaintiff's employment regardless of whether the entity is specifically mentioned herein. The Parties further agree that any future acts by Defendant in denying Plaintiffs employment, shall not be construed as retaliation pursuant to 29 U.S.C. 215(a)(3).

6. **Non-Admission Clause.** By entering into this Agreement, Defendant does not admit any liability whatsoever to Plaintiffs or to any other person arising out of any claims asserted,

2 of 4

Hakli 
Laroussi

Defendant_____

or that could have been asserted in any claim, and expressly deny any and all such liability and have resolved this matter solely as a business decision to save the expenditure of attorneys' fees.

7. **Non Disparaging Remarks**. The Parties agree that they will not disparage one another, by written or oral word, gesture, or any other means, nor will they make any untrue disparaging or negative comments about one another, to any person or entity. In the event that a prospective employer requests a reference for Plaintiffs, the parties agree that Defendant will only provide dates of work, position(s) held, and/or rates of pay and will not make any reference to any claim, lawsuit, nor to the resolution thereof.

8. **Agreement Not to Be Used as Evidence**. Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be deemed to be, or may be used as, an admission of, or evidence of the validity of any released claim, or of any wrongdoing in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Agreement. Defendant, however, may file this Agreement in any action that may be brought against it in order to support a defense or counterclaim based on principals of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9. **Severability**. In the event that one or more terms or provisions of this Agreement are found to be invalid or unenforceable for any reason or to any extent, each remaining term and provision shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

10. **Entire Agreement**. This Agreement constitutes the complete understanding of the parties hereto and supersedes any and all prior agreements, promises, representations, or inducements, whether oral or written, concerning its subject matter. No promises, modifications, or agreements made subsequent to the execution of this Agreement by these parties shall be binding unless reduced to writing and signed by an authorized representative of each party.

11. **Enforcement**. In the event any action is commenced to enforce said settlement agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

12. **Voluntariness**. Each Plaintiff certifies that he has fully read, negotiated, and completely understands the provisions of this Agreement, that Plaintiffs have been advised by Defendant to consult with an attorney before signing the Agreement, and that Plaintiffs are signing freely and voluntarily, and without duress, coercion, or undue influence.

13. **Representation of Comprehension of Document**. Plaintiffs affirm and acknowledge that: (i) Plaintiffs have been given twenty-one days to review this document and make a decision prior to its execution, and, if Plaintiffs have elected to take less time to consider this document, Plaintiffs did so knowingly, voluntarily, and with full understanding of the waiver of their legal right to consider this document for the full twenty-one days; (ii) Plaintiffs have had the opportunity to consult with counsel regarding the terms of this document prior to execution

Hakli _____  
Laroussi _____

3 of 4

Defendant _____

and did in fact consult with counsel; (iii) Plaintiffs fully understand this document; and (iv) Plaintiffs have freely and voluntarily executed this document.

      14.    **Option to Revoke.** Plaintiffs affirms and acknowledges that they are forty years old or older on or before the date of this Agreement, and have seven days following the execution of this Agreement to revoke his agreement and it will not become effective or enforceable until after the seven-day revocation period has expired. Any revocation must be in writing and received by Russell Landy, Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, FL 33131 within the seven-day period following execution of this Agreement by the revoking Plaintiff. The amounts set forth above will not be paid until the expiration of this 7 day revocation period, or longer as set forth herein.

      15.    **Approval**: Within eight days of the execution of this Settlement Agreement by all parties, the parties will file with the court a joint motion to approve the Settlement Agreement. The parties and their counsel will take all actions necessary to gain approval of the settlement and dismiss the Litigation with prejudice.

      16.    **Counterparts**: This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

BERKANT HAKLI

By: _[signature]_
BERKANT HAKLI

Date: 06/29/2017

BAL HARBOUR TOWER CONDOMINIUM ASSOCIATION, INC.

By: _____

Print Name:

Date: _____

KARIM LAROUSSI

By: _Karim Laroussi_
KARIM LAROUSSI

Date: 06/29/2017

Hakli _[initials]_
Laroussi _[initials]_

4 of 4

Defendant_____